# EXHIBIT 1

LAW OFFICES
J. ANDREW COOMBS
A PROFESSIONAL CORPORATION
517 EAST WILSON AVENUE, SUITE 202
GLENDALE, CALIFORNIA 91206-5902
TELEPHONE (818) 500-3200
FACSIMILE (818) 500-3201

March 11, 2008

**Via First Class Mail**
**And Email**

MargaretCaruso@QuinnEmanuel.com

Margaret M. Caruso, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
555 Twin Dolphin Drive, Suite 580
Redwood Shores, California 94065

**Re: Louis Vuitton Malletier, S.A. v. NexTag, Inc., et al.**
**Case No.: CV 07-3763 MMC**

Dear Ms. Caruso:

I follow up on our telephone conferences concerning defendant NexTag, Inc.'s ("NexTag") proposed deposition of plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton") pursuant to Federal Rule of Civil Procedure 30(b)(6). In particular, I follow up on NexTag's demand that the deposition proceed in the Northern District of California.

We note the fundamental presumption that the proper venue for the deposition of a corporate witness, including a corporate party, is the principal place of business of that corporate party. See, for example, *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625 (C.D. Cal. 2005); *Sears v. American Entertainment Group*, 1995 U.S. Dist. LEXIS 1754 (N.D. Ill. Feb. 10, 1995). Louis Vuitton acknowledges that several factors can rebut this presumption and it has offered alternatives designed to accommodate those factors which might otherwise suggest a different conclusion. In particular, Louis Vuitton has offered to make itself available for telephonic deposition and, in the alternative, to make itself available in New York where it maintains an office which deals with some intellectual property enforcement issues. Should it be required to appear in California, Louis Vuitton believes that reimbursement of out-of-pocket expenses incurred to make that appearance is appropriate. See *Custom Form Manufacturing, Inc. v. Omron Corp.*, 196 F.R.D. 333 (N.D. Ind. 2000).

We note that the competing principle – that a plaintiff's deposition may be compelled in a venue which it picked to file an action – should properly be given no weight in the circumstances of this case where the venue was dictated not by Plaintiff's preference or convenience, but by the Defendant's own location.

**Defendant's Document Production**

Now that the Court has entered the Protective Order pursuant to the parties' stipulation, please advise when we can expect production of materials withheld pending entry of same. Will copies be produced and, if so will they be hard copy or digital? (I.e. please advise whether it will be necessary to send a copy service to your office or to NexTag and, if so, when that can be scheduled?)

Plaintiff proposed that certain categories can be acknowledged as privileged without inclusion of the numerous specific documents in the privilege log, namely attorney-client communications and intra-office communications. These categories would concern both post-litigation communications as well as pre-litigation communications that anticipated litigation, not including communications with investigators. You advised that you would consult with your client.

*Requests Nos. 7, 13, 16-19, 22-23, 25, 33-34*: A common objection by Defendant was that certain production requests were overly burdensome or unclear and ambiguous. In light of our discussion, Counsel has limited many requests for documents relating to or concerning the relationship between Defendant and its merchants. Counsel have agreed that requests regarding Defendant and its "services" should be construed as dealing with such relationships with merchants, including but not limited to any agreements, offers, revenue, promotional or marketing material to pitch services to merchants, etc. Counsel have also confirmed that Plaintiff is not interested in the mortgage, travel or other extraneous services of Defendant nor is Plaintiff interested in Defendant's employment policies, dividends, etc.

*Request No. 9*: Counsel also confirmed that Defendant owns the Calibex website, which provides essentially the same kind of service as provided on the NexTag website, and that Defendant is not going to make an issue of ownership. Given that Defendant is willing to stipulate to ownership or admit ownership during a deposition, production of documents is not necessary at this time.

*Request No. 15*: I confirmed that Plaintiff is not interested in the "millions of offers" posted by Amazon on NexTag's websites.

*Requests Nos. 16-19*: Counsel confirmed that this request is not limited to simply the Louis Vuitton offers that were made, but we agreed that much of this information

may be illuminated in the pending deposition of Defendant. Therefore, we have agreed to circle back with future requests should the need arise.

*Request No. 20*: Counsel confirmed that "monitor" relates to the extent Defendant exercised independent judgment over the posting of offers, either through a filtering program, human oversight or something similar. Subject to this clarification, Defendant will produce responsive documents.

*Requests Nos. 21, 31-32*: Defendant has continued to object to these requests on the basis of relevance. Plaintiff contends that the prior allegations of infringement and prior litigation are directly relevant in that they tend to prove or disprove Defendant's degree of control over its websites, Defendant's knowledge of the use of its services for infringement, and Defendant's response to such notification, all of which are elements of the claim for contributory infringement. If Defendant continues to object and not provide the information requested, Plaintiff will have no choice but to file a Motion to Compel.

*Request No. 26*: Plaintiff has confirmed that it does not seek production of the code used to create the search and directory feature. To the extent that other plain-English documents exist which describe the operation and organization of the results of the directory or search feature of the websites, these documents will be produced, although you have stated that you do not believe any such documents exist.

*Request No. 27*: Counsel has confirmed that for purposes of these requests, "Plaintiff" refers to Louis Vuitton Malletier, S.A., the corporate client and not Louis Vuitton the trademark or the brand. You have stated that you will consult with your client but believe this understanding to be acceptable.

*Request No. 28*: Plaintiff has confirmed that it is willing, at the present time, to forego pursuing the corporate tax returns requested.

*Requests Nos. 15-16, 36-38*: In response to certain requests, you stated that you were unsure as to Defendant's capture and/or retention of certain information, including but not limited to the underlying offers posted on Defendant's websites and primary documentation of payment information. We reiterate Plaintiff's position that Defendant has been under an obligation to preserve evidence for trial. In light of such continued statements that certain evidence no longer exists, Requests Nos. 36-38 regarding document retention become even more important and should be produced in detail.

**Plaintiff's Deposition of Defendant and its Witnesses.**

As for the requests to which Defendant objected and refused to provide documents that have not been discussed above, I have agreed to forego pursuing these requests for the time being, as the information may be revealed in the pending NexTag deposition or as part of the response to other requests. Should the need for these documents arise in the future, we can revisit these requests at that point. Please provide times for deposition previously requested.

**Defendant's Document Production Request**

*Request No. 16:* We have agreed to produce, or identify as privileged, any investigative reports pertaining to NexTag.

*Request Nos. 17-23:* Defendants seek all documents pertaining to Louis Vuitton's intellectual property enforcement for a ten year period and on a global basis. Although Defendant accepted that some temporal and geographic limitation may be appropriate, and that its sole justification for such expansive discovery was the purported "reversal of enforcement costs" sought by Louis Vuitton in this action, it would not rule out the range of materials sought by these requests. Notwithstanding, Louis Vuitton agreed to determine whether some non-privileged "top-line" summary of enforcement efforts exists and might be produced in an effort to avoid motion practice on this issue.

*Request No. 35*: Louis Vuitton agreed to determine whether a table of organization which places its intellectual property enforcement efforts within its corporate framework exists and can be produced. We agreed that the request does not seek and Louis Vuitton is not agreeing to production of documents pertaining to its affiliated companies.

*Requests Relating to Louis Vuitton Revenues, etc.*: Louis Vuitton has agreed that it is not seeking actual damages predicated upon its lost profit. Louis Vuitton expressly reserved its right to seek both actual damages predicated upon unjust enrichment (by NexTag or by those merchants whose counterfeit sales were enabled by NexTag's contributory or vicarious infringement) and statutory damages. Based upon this agreement, NexTag withdraws its request for discovery on these issues. See Requests Nos. 42-50.

*Requests Relating to Copyright and Trademark Prosecution*: Louis Vuitton has agreed to produce certificates of registration. We are reviewing NexTag's insistence upon the entire (superseded) prosecution history for all registrations alleged in the Complaint with the client.

*Requests Relating to Licenses*: This confirms the understanding stated during our meet and confer that there are no licenses for the Louis Vuitton intellectual property alleged in the Complaint for any of the product categories at issue in this litigation.

*Request to Inspect Exemplars of Authentic Product*: Defendants have agreed that Louis Vuitton's production of authentic product may be limited to exemplars of any authentic product Louis Vuitton intends to use to prove the elements of its claims. We are reviewing this with our client and will advise whether and, if so, how such an inspection may proceed.

I can advise that Louis Vuitton is in a position to make production by digital copies – although there is one category of documents which may be the subject of a confidentiality agreement and we are researching that issue to determine (a) what if any steps Louis Vuitton must undertake before making production and/or (b) whether the material will need to be marked confidential. We hope to have answers to these questions shortly.

Very Truly Yours,

J. Andrew Coombs,
A Professional Corporation

By: J. Andrew Coombs
Counsel for Plaintiff Louis Vuitton Malletier, S.A.

JAC/bm

# EXHIBIT 2

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5101**

WRITER'S INTERNET ADDRESS
**margretcaruso@quinnemanuel.com**

*Via electronic delivery and U.S. Mail*

March 18, 2008

J. Andrew Coombs, Esq.
Law Offices of J. Andrew Coombs
517 East Wilson Avenue, Suite 202
Glendale, CA 91206

Re: *Louis Vuitton Malletier S.A. v. NexTag, Inc, et al*, Case No. CV 07-3763 MMC

Dear Andy:

I write on behalf of NexTag, Inc. ("NexTag"), in response to your March 11 letter on behalf of Louis Vuitton Malletier S.A. ("Louis Vuitton"). This letter responds to your understanding of the progress we have made towards resolving our outstanding discovery disputes.

**I. Privilege Log Issues**

Regarding your proposal that certain categories be acknowledged as privileged without inclusion in the privilege log, we are agreeable to acknowledging that post-litigation documents consisting of attorney-client communications and/or work-product are privileged and do not have to be included in a privilege log. We will also agree that documents consisting of attorney-client communications concerning drafts of the complaint or the work product of outside counsel relating specifically to this action, are privileged and need not be logged. All other pre-litigation communications must be included in the privilege log if Louis Vuitton is asserting that they are protected from disclosure.

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 100101 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

**II. Louis Vuitton 30(b)(6) Deposition**

Louis Vuitton continues to refuse to produce its 30(b)(6) witness for deposition in the Northern District of California, the jurisdiction in which it brought its lawsuit against NexTag. Louis Vuitton's position is that case law demands that the deposition take place in New York, where Louis Vuitton is located. However, the only case law you provided us involving the deposition of a *plaintiff* (and the only California case law) actually supports that Louis Vuitton should produce its witness in California. *See Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625 (C.D. Cal. 2005). Federal courts in California clearly hold that a "plaintiff will be required to make himself or herself available for examination in the district in which suit was brought." *Lexington Ins. Co. v. Commonwealth Ins. Co.*, Case No. C98-3477 CRB (JCS), 1999 WL 33292943 at *8-9 (N.D. Cal. September 17, 1999) (internal citation omitted). It does not matter that Louis Vuitton filed in the Northern District of California because it was the location of NexTag's corporate headquarters; the fact is, that is where it filed suit. *Lexington Ins. Co. v. Commonwealth Ins. Co.*, 1999 WL 33292943 at *9 (considering and rejecting the argument that plaintiff should not have to be deposed in the Northern District of California when that forum was selected solely because it was the home of the defendant). Therefore, unless we receive notice of a change in your position on this issue, we will plan to file a motion to compel production of your witness(es) in the Northern District of California.

**III. NexTag's Discovery Responses**

We are prepared to begin producing documents to you when the parties decide upon a mutually agreeable date for such production. We will continue to produce documents on a rolling basis until production is complete. We expect that some documents will be produced in electronic format and some documents will be produced in hard copy. For hard copies, we will produce paper versions, provided that Louis Vuitton pays the reasonable cost of copying, which will depend on the size of the document but in most cases is approximately $0.24 per page.

*Requests Nos. 7, 13, 16-19, 22-23, 25, 33-34:* We would like to clarify that you limited these requests regarding "services" to services NexTag performed to only those merchants that listed LV branded products. Additionally, you agreed to limit the scope to only product shopping--excluding services NexTag provides in other areas such as mortgage, education, travel, and other irrelevant areas. This limitation will apply to all discovery responses, except of course where information is intertwined with otherwise responsive information, in which case it will be produced.

*Request No. 15:* We stated that NexTag will produce a spreadsheet of the information you have requested regarding listings of LV branded products. You stated that you would like information regarding *all* NexTag listings (irrespective of whether they were of LV branded products) of those merchants that posted LV branded products. We questioned the relevance of this

information because NexTag cannot possibly be held legally responsible for purchases made of products on a website that were not listed on NexTag's site. You did not dispute this, but nonetheless insisted that Louis Vuitton wanted all product listings other than the millions of offers listed by Amazon. We are willing to consider how such listings might be relevant to this action, but thus far, we have not heard an explanation.

*Request No. 20:* Plaintiff limited "efforts to monitor the business or trade at the websites" to efforts to monitor the offers listed on the website relating to the LV products. NexTag is willing to produce documents concerning any human exercise of independent judgment over the posting of offers of LV branded products. For purposes of clarification, we do not understand Louis Vuitton to be seeking computer code type documents.

*Request Nos. 21, 31-32:* NexTag does not understand the relevance of the requested documents, which pertain to complaints and litigation brought by other intellectual property owners, to this action between Louis Vuitton and NexTag. As I have told you, NexTag does not dispute that if an intellectual property owner complains to NexTag about use of its intellectual property, NexTag will work with that intellectual property owner to take appropriate action. Until the relevance of this category of documents has been established, NexTag will not undertake the burden of identifying and producing those complaints and litigation concerning allegations of contributory trademark or copyright infringement, as you agreed to narrow the category of documents sought.

*Request No. 26:* NexTag will produce any "plain-English" documents that exist that describe the operation and organization of the results of the directory or search feature of the websites.

*Request Nos. 15-16, 36-38:* I must take issue with your reference to "such continued statements that certain evidence no longer exists." I never made such a statement. To the contrary, I explained that I was not sure what responsive electronic records existed going back in time, particularly given the parties' agreement, reflected in the Joint Case Management Statement, that neither party need undertake any additional measures beyond their current policies to preserve electronic information. Nonetheless, as I stated during the call, NexTag will produce documents reflecting all listings of LV branded products it has going back to 2004, as well as records reflecting the number of clicks associated with each such listing. NexTag will also produce communications sent only to Ezhandbags (as opposed to blanket communications sent to large numbers of merchants).

**IV. Louis Vuitton's Discovery Responses**

*Request Nos. 28, 36-38, 40-51: Louis Vuitton's Revenues*

Louis Vuitton states that it will pursue actual damages solely in the form of disgorgement, and will not seek other forms of actual damages, including but not limited to its lost profits or damage to the value of its intellectual property. So long as Louis Vuitton agrees to forego all avenues of actual damages other than disgorgement, NexTag agrees not to pursue discovery requests related to such damages at this time. This includes Interrogatory Nos. 12-16, and Request For Production Nos. 28, 36-38, 40-51. Should Louis Vuitton seek damages involving its lost profits or damage to its trademarks or copyrights, or should these subjects otherwise become relevant, NexTag will revisit these requests.

Please note that NexTag continues to request Louis Vuitton's gross and net profits as part of its determination of the percentage of its profits that Louis Vuitton invests in policing its intellectual property and enforcing its related policies, per Interrogatory No. 11.

*Request Nos. 17-23, 27-30, 29-34: Louis Vuitton's Intellectual Property Policing and Enforcement*

Regarding NexTag's use of the words "Louis Vuitton" in any way, you have explained Louis Vuitton's position as NexTag having a choice: it cannot be in business at all or it can not use any words involving or relating to Louis Vuitton unless it knows for a certainty that every one of the products listed on the site is not infringing. Given Louis Vuitton's position, you acknowledged that it is relevant to NexTag to know how much of a policing and enforcement burden Louis Vuitton has accepted in comparison to what it expects of NexTag. Based on this discussion, Louis Vuitton agrees to produce existing policies and procedures relating to the protection and policing of its intellectual property.

Further, you have offered to confer with Louis Vuitton representatives to ask them to identify and produce high-level, "top-line" documents sufficient to provide evidence of the resources it invests in protecting and policing its intellectual property. Such a production must include documents providing information on both policing and protection budgets, and the internal policies on which those budgets are based. In addition, you agreed to discuss with Louis Vuitton representatives the identification and provision of documents related to all alleged intellectual property infringement involving use of the Internet.

If Louis Vuitton produces the above material, NexTag agrees to wait to obtain and review that material before pursuing its broader inquiries concerning Louis Vuitton's policing of its intellectual property. The parties can meet and confer after Louis Vuitton's initial production of documents on this topic to determine what additional discovery, if any, is necessary. Production meeting the above description will also be sufficient as an initial response to Interrogatory Nos.

8-10, and Request for Documents Nos. 17-23, 27-30, 29-34, which we may revisit depending on the scope of Louis Vuitton's production.

*Request No. 26: Inspection of Authentic Louis Vuitton Products*

As we discussed, NexTag's position is that Louis Vuitton must produce any physical product on which it intends to rely at trial in any way, or on which it otherwise intends to rely to prove its claims in this matter. We are awaiting Louis Vuitton's response on this. For purposes of clarification, pursuant to Interrogatory Nos. 5 and 7 and Request Nos. 24, 25, and 65, NexTag also seeks production of all products sold by third parties that Louis Vuitton has obtained, or have been obtained on its behalf, in connection with investigative efforts relating to this action.

*Request No. 35: Confirmation of Production of Organizational Chart*

NexTag understands that Louis Vuitton will produce, if they exist, organizational charts (from 2004 through the present) reflecting the role of intellectual property enforcement efforts within its corporate framework. NexTag does not seek information regarding the products of sister brand companies such as Fendi, Marc Jacobs, and Givenchy, and such sister companies therefore do not need to be reflected in the organizational chart. However, to the extent that requested documents relating to the Louis Vuitton branded products and actions related thereto are in the custody of any of the Plaintiff corporation's subsidiaries, parents, or affiliated companies, NexTag will require production of those documents. In other words, if the actual Plaintiff in this action is a shell company with no employees, as you suggested during our last call, we will not be satisfied with responses and production limited to that shell company.

*Request Nos. 7-10: Documents Related to NexTag*

In our previous meet and confer conversations, Louis Vuitton agreed to provide all non-privileged documents it has relating to NexTag, including but not limited to documents evidencing any alleged intent on the part of NexTag, and any correspondence it had with NexTag. Louis Vuitton agrees that it to the extent it had any oral communications with NexTag, documents sufficient to identify each of those communications will be produced. NexTag agrees that a full and complete production of such information shall provide sufficient response to Request For Production Nos. 7-10.

*Request Nos. 11-16, 24-2: Documents Related to Investigations of Claims in This Matter*

Your letter of March 11 agreed to produce or identify as privileged any investigative reports pertaining to NexTag. However, you agreed to a somewhat broader scope during our telephone conversations, i.e., production of all non-privileged documents relating to Louis Vuitton's investigations of NexTag's alleged infringement of Louis Vuitton's intellectual property, including but not limited to formal reports of those investigatory efforts and their findings. NexTag agrees that production consistent with the scope of what you agreed to during our call shall provide sufficient response to Request For Production Nos. 11-16 and 24-25 at this time.

*Request No. 53, 56, 64: Licenses, Contracts and Assignments of Intellectual Property*

Your letter of March 11 states that no licenses exist for any Louis Vuitton intellectual property at issue in this matter. NexTag's discovery inquired not only into the existence of licenses, but into contracts and assignments of any sort. Please confirm that Louis Vuitton's denial of the existence of licenses also includes denial of the existence of contracts, assignments or the existence of any third party right or claim to the intellectual property at issue in this matter, or agree to produce such other documents.

*Request Nos. 52, 54-55, 58-61, 63: Copyright and Trademark Prosecution Registration*

Per your letter of March 11, Louis Vuitton will produce copyright and trademark registrations for all intellectual property relevant to Louis Vuitton's claims, and you will confer with Louis Vuitton about the production of documents related to the prosecution history of those registrations, all of which NexTag is seeking.

*Interrogatory Nos. 1-2: Specificity Regarding Claims*

In our previous conversations you agreed that, in response to Interrogatory Nos. 1 and 2, Louis Vuitton would provide specific URL addresses to identify each allegedly infringing activity. As discussed above, given Louis Vuitton's restriction on the theories of actual damages under which it may pursue recovery, NexTag agrees not to pursue its requests for identification of the specific names and numbers of the products unless such information otherwise becomes relevant.

Please let me know if our understanding of your position on these issues is in any way inaccurate. Also, please provide written confirmation of our understanding of our positions to the extent our explanation altered the descriptions in your letter of March 11. Finally, now that the Protective Order is in place, please advise as to when we can expect to receive your document production. I look forward to continuing to work with you to resolve the outstanding discovery issues expeditiously and without resorting to motion practice.

Very truly yours,

Margret M. Caruso

Margret M. Caruso

# EXHIBIT 3

**quinn emanuel** **trial lawyers | silicon valley**

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5101**

WRITER'S INTERNET ADDRESS
**margretcaruso@quinnemanuel.com**

*Via electronic delivery and U.S. Mail*

March 25, 2008

J. Andrew Coombs, Esq.
Law Offices of J. Andrew Coombs
517 East Wilson Avenue, Suite 202
Glendale, CA 91206

Re: *Louis Vuitton Malletier S.A. v. NexTag, Inc, et al,* Case No. CV 07-3763 MMC

Dear Andy:

I write on behalf of NexTag, Inc. ("NexTag") regarding outstanding discovery issues in the above-referenced matter. In my letter to you of March 18, I outlined NexTag's positions on the outstanding discovery issues remaining between NexTag and Louis Vuitton Malletier S.A. ("Louis Vuitton"). A week has past since that letter was emailed to you and we have not yet received any response.

As I have discussed with you, while we would prefer to resolve these differences amicably, if it is necessary for NexTag to file a motion to obtain the information and materials it requested in discovery, it will do so. It was my understanding based on our communications thus far that you intended to work with us to expedite resolution of these matters. Given the quickly approaching mediation date in this case, and amount of work that needs to be completed by then, NexTag cannot afford to wait indefinitely to resolve the outstanding discovery issues.

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 100101 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

Please let me know Louis Vuitton's position on all outstanding discovery matters by the close of business Friday, March 28, 2008. If we do not receive a response by that time, we will have to prepare a motion to compel.

I continue to hope that we can work together to resolve these discovery issues and spare our clients the expense and inconvenience of discovery-related motion practice.

Very truly yours,

Margret M. Caruso

Margret M. Caruso

# EXHIBIT 4

LAW OFFICES
J. ANDREW COOMBS
A PROFESSIONAL CORPORATION
517 EAST WILSON AVENUE, SUITE 202
GLENDALE, CALIFORNIA 91206-5902
TELEPHONE (818) 500-3200
FACSIMILE (818) 500-3201

March 28, 2008

**Via First Class Mail**
**And Email**

MargaretCaruso@QuinnEmanuel.com

Margaret M. Caruso, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
555 Twin Dolphin Drive, Suite 580
Redwood Shores, California 94065

**Re: Louis Vuitton Malletier, S.A. v. NexTag, Inc., et al.**
**Case No.: CV 07-3763 MMC**

Dear Ms. Caruso:

I reply to your letter dated March 18, 2008. I note the unilateral and arbitrary deadline set forth in your letter of March 25, 2008 and, in the interest of resolving outstanding discovery issues to the extent possible, will address outstanding areas of disagreement and, where possible, Louis Vuitton's position concerning those disagreements. To the extent that the Defendant believes it necessary to proceed with a motion to compel notwithstanding the fact that our internal review of these issues continues, then so be it, though I am hard pressed to see the significance of your deadline.

**Privilege Log**

We note NexTag's refusal to agree to a general exception from individual designation of "pre-litigation" communications among counsel or between counsel and client. We will prepare such a log and look forward to receiving NexTag's log of such communications as were requested but withheld as privileged.

**Deposition Schedule**

We have reviewed the authority cited in your letter (and others) and do not believe the Defendant can demonstrate circumstances justifying departure from the presumption that a corporate deposition will be taken at the principal place of business of

the corporation. Notwithstanding this interpretation of the applicable authority, Louis Vuitton has offered alternatives (including a deposition in New York at Louis Vuitton's sole expense), all of which have been rejected.

In addition, we note that, despite repeated requests we have been offered no dates for the deposition of any of the defendants' witnesses and, unless we are promptly provided with dates, we shall have to infer that the defendants' refuse to meet and confer at all on the scheduling of those depositions and we will proceed to notice accordingly.

**NexTag Document Production**

As we noted in our letter of March 11, Louis Vuitton is prepared to begin producing documents. It only awaits the "mutually agreeable date" for production which you note in your letter of March 18.

Given the relatively high cost of copying proposed we would appreciate your estimate of the number of paper pages to be produced so that we may determine if the efficiencies warrant retention of a copy/scanning service in lieu of the payment you propose in your letter.

Regarding Request No. 15 we stated that the Defendants' infringement of Louis Vuitton's trademarks and copyrights drove traffic to merchants who sold, in addition to counterfeit Louis Vuitton merchandise, other merchandise – some of which would not have been sold but for the Defendant's own infringement of Louis Vuitton's trademarks. We have all "browsed" the Internet and know that the benefit of redirected traffic is not limited to the initial page to which the Internet user is diverted and it is for this reason that we are not prepared to limit the request as you propose. Contrary to your letter, we did dispute the scope of NexTag's liability and do not appreciate this misstatement of our meet and confer discussion.

Regarding Requests numbered 21 and 31-32 we repeatedly stated that these documents are relevant to demonstrate NexTag's willfulness and its ability to control the infringing activity appearing on its website (in stark contrast to the way in which it responded to Louis Vuitton's notices).

Regarding Requests numbered 15-16 and 36-38 the partial reference to the Case Management Statement is telling. Louis Vuitton would never have agreed to the language you note if Defendant had not already agreed that its policies were sufficient to preserve relevant evidence. The gist of our meet and confer (and your letter of March 18) now appears to suggest this is not the case and, of course, if this is borne out by NexTag's production, Louis Vuitton will no doubt wish to bring this to the Court's attention. Regarding communications, these should be applicable to all merchants selling LV

branded merchandise and not only Ezhandbags. Please clarify or explain why NexTag believes that communications with only the one counterfeiter are discoverable.

**Louis Vuitton Document Production**

Requests numbered 17-23, 27-30, 29-34 seek documents about admittedly unrelated intellectual property enforcement efforts. We still do not understand the grounds asserted for relevance and, given the breadth of these requests, must conclude that they are sought solely for purposes of harassment. They will not be produced.

Request numbered 26 seeks inspection of authentic Louis Vuitton merchandise. As limited and subject to coordinating the particulars of such inspection, Louis Vuitton will make authentic product available for inspection.

Requests numbered 53, 56 and 64 seek licenses and other contracts, assignments (presumably any transfer by LV to third parties) and, as noted in my letter of the 11th, there are no such agreements as relate to the product lines at issue in this case.

Requests numbered 35, 52, 54-55, 58-61 and 63 (table of organization, trademark and copyright prosecution/application history) are still at issue and under review. As noted above, we are not prepared to respond at this time but hope to be able to do so shortly.

Very Truly Yours,

J. Andrew Coombs,
A Professional Corporation

By: J. Andrew Coombs
Counsel for Plaintiff Louis Vuitton Malletier, S.A.

JAC/bm